## City of Rutland v. Theodore Keiffer and Catherine Keiffer

[ 205 A.2d 400 ]

October Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 1, 1964

*Sullivan & Battles* for plaintiff.

*Williams & French* and *Gilbert F. Meyers* for defendants.

**Keyser, J.** This is a petition in chancery for a declaratory judgment to have determined the respective rights of the parties under certain provisions of the zoning ordinance and amendments of the plaintiff, City of Rutland.

The petition requested the court below to decide three questions.

1. (a). Whether the original zoning ordinance of the City of Rutland entitled "Municipal Zoning Ordinance of the City of Rutland, Vermont" enacted in 1948 applied to mobile home parks?
 (b). If so, in what manner?

2. (a). Whether the subsequent amendment to the original zoning ordinance entitled "Amendment to the Municipal Zoning Ordinance of the City of Rutland, Vermont" effective as of December 16, 1959, which ordinance among other things requires the operator of a mobile home park to obtain a license before operating a mobile home park applies to Defendant or Defendants prior to its enactment?

3. (a). Whether the amendment to the amended ordinance entitled "An Amendment to the Municipal Zoning Ordinance of the City of Rutland, Vermont, as Amended" effective on or about July 16, 1961 applies to Defendant or Defendants mobile home park?
 (b). If so, in what manner?

An agreed statement of facts was filed upon which the court entered its decree.

The defendants were granted leave to appeal from the decree before final judgment (12 V.S.A. §2386) and the above questions were certified to this court for review.

The power of a municipality to accomplish zoning exists by virtue of the authority delegated from the state. *Thompson* v. *Smith,* 119 Vt. 488, 129 A.2d 638.

The Municipal Zoning Act was passed by the legislature in 1931 and delegated the power to zone to a municipality to promote the health, safety or general welfare of the community. No. 55, Acts of 1931.

The law is well settled that municipal zoning ordinances are constitutional in principle as a valid exercise of the police power when reasonably related to public health, safety, morals, or general welfare. Rhyne, Municipal Law, §32-2; *Schneider* v. *Bd. of Appeals,* 402 Ill. 536, 84 N.E. 2d 428; Anno. 22 A.L.R. 2d, at pp. 780-782. The plaintiff city enacted a Municipal Zoning Ordinance on January 24, 1948, effective March 2, 1948, under the authority granted by the provisions of Chapter 153 of the Public Laws of Vermont, sections 3723-3747, now Chapter 67, 24 V.S.A. §§3001-3026.

The defendants established a trailer or mobile home park on their property located on Allen Street in the City of Rutland in May, 1952. Although the agreed facts do not so state, both parties are in agreement that Allen Street is zoned in an industrial district, and we so treat it. Effective December 16, 1959, plaintiff city by its Board of Aldermen passed an amendment to the city's zoning ordinance by adding thereto a new section, section 23, relating specifically and solely to mobile home parks. This amendment was amended effective about July 16, 1961. Section 23 and the amendment thereof substantially follow the terms of the enabling act, 24 V.S.A. §§2231-2233, the validity of which is not questioned or attacked here.

The ordinance and amendments are neither exhibits nor specifically found as facts. However, in view of the statements of counsel, both in their briefs and arguments, and the appendage of them to defendant's brief, we likewise consider them as being a part of the record before us. The original zoning ordinance does not mention or refer to the subject of house trailer or mobile home parks as such by name or definition.

The first question is whether the original zoning ordinance of 1948 applies to mobile home parks. The court below decreed:

"The original zoning ordinance of the City of Rutland enacted in 1948 does not apply to Mobile Home Parks as such but applies to the individual units. If the unit is a Mobile Home as defined in the subsequent amendment it would then be a dwelling house; if a trailer as defined by the amendment it would not be a dwell-ing house."

The defendants urge the court was in error in holding that the 1948 zoning ordinance applied to the individual units. The plaintiff contends the ruling of the court in its entirety was correct.

■ Zoning ordinances are to be strictly construed for the reason that they are in derogation of common-law property rights. *In Re Willey,* 120 Vt. 359, 365, 140 A.2d 11. The zoning measure will be construed to give the words used their ordinary meaning and significance, 8 McQuillan, Municipal Corporations §25.71, and where no definition of a word is given in an ordinance, it must be given its commonly accepted use. *In Re Willey, supra,* p. 361. The test to determine whether the zoning ordinance applied to house trailers or mobile

home parks depends upon the intention of the Board of Aldermen when it passed the ordinance. *Manchester* v. *Webster,* 100 N.H. 409, 128 A.2d 924.

■ The amendment to the zoning ordinance specifically relates to trailer or mobile home parks and was passed eleven years after the original ordinance. Considering this fact together with the lack of reference to house trailer or mobile home parks in the 1948 ordinance, it is clear that there was no intention on the part of the city to regulate or control by zoning house trailer or mobile home parks. As to this, we agree with the decree.

■ The court below further held that the 1948 ordinance applied to the individual units. The court decreed that such unit was or was not a dwelling house according to the definitions of trailer and mobile home given in the 1959 amendment. These are Sections 23(1) (D) and (G) respectively. The character of the unit depends solely upon the interpretation of the provisions of the original ordinance, not upon, or aided by, a definition given to it some eleven years subsequent to 1948.

Section 2 of the 1948 ordinance provides that existing use of buildings and structures and of land is not affected by the ordinance. Section 3 permits the continuance of any non-conforming lawful building or structure, or the use thereof and of land. Since defendants' trailer or mobile home park was established nearly five years after the original zoning ordinance was passed, these two sections are, of course, not in point on this first question.

Section 10 of the 1948 ordinance states ". . . the following shall be permitted in all portions of the city within the Business B district and Industrial classifications, . . . subject to the provisions of other sections of this ordinance and to the usual sanitary and health requirements: . . . (14) The renting of over-nite cabins and *space for automobile trailers* provided the set-back and side yard provisions for residence B districts are complied with. . . ." (emphasis added).

Here, we find a specific reference in this section to automobile house trailers. The words "mobile home" are of more recent origin, undoubtedly because it has more sales appeal in the trade. Further, it is common knowledge that a great improvement has been made in the construction of, and equipment and facilities in, mobile house trailers. But a mobile home is nothing more or less than automobile

house trailer. Both are designed and built as a moveable family dwelling. Whether they are placed on a location for use as a temporary, semi-permanent, or permanent dwelling depends on the circumstances of each case.

There are no findings here as to the type of construction of the trailer or mobile homes on defendants' land, the foundation on which they rest, connections to necessary utilities, and the use made of them. However, we may assume here that the defendants' trailer park was used to accommodate house trailers or mobile homes moved upon a site in the park more or less for temporary occupancy. The temporary nature of such occupancy is to be distinguished from a permanent location of the trailer on a lot for residential purposes as was the case in *In Re Willey, supra*.

Section 11 of the original ordinance relates to Industrial districts and provides in sub-paragraph 2 that all buildings used exclusively for residential purposes in such districts shall conform to the minimum lot size and yard regulations for dwellings in Residence B districts (section 14).

In construing zoning ordinances special provisions relating to subjects will control over general provisions. Rhyne Municipal Law, §§9-12, p. 244; 50 Am. Jur. Statutes, §249, pp. 244-246. Accordingly, it is clear that section 11 does not apply to the defendants' trailer park or the units therein. Section 10(14) specifically grants a permissive use of land for the purpose of renting space for automobile house trailers. That section controls here over the general provisions of section 11. *In Re Downers Estate,* 101 Vt. 167, 177, 142 Atl. 78.

The defendants were in compliance with the original ordinance in developing their land for the purpose of renting space for automobile house trailers provided, of course, their park as a whole met the set-back and side yard provisions required by section 10(14). The court below erroneously decreed that the 1948 ordinance applied to the individual units in defendants' trailer park.

The second question is whether the amendment to the original zoning ordinance requiring a mobile home park operator to obtain a license to operate it and the amendment to this amendment apply to the defendants.

The decree of the court is:

"The subsequent amendment effective December 16, 1959 requiring a license applies to any Mobile Home park operating prior to the effective date of the amendment and as this Mobile Home park was in operation prior to the effective date of the amendment it still is subject to the amendment. This is because of the police power delegated to the municipal corporation through 24 V.S.A. 2231-2233.

"As is true in No. 2 so is true in No. 3. The amendment does apply to the defendants' Mobile Home park."

The regulation and licensing of trailer parks by ordinance was specifically authorized by No. 281, Acts of 1957, now 24 V.S.A. §§2231-2232.

Section 2231 reads: *"Trailer park ordinance authorized.* The selectmen of a town, the trustees of a village and the board of aldermen of a city may enact an ordinance to provide for the regulation and licensing of all parks for trailer coaches or mobile homes within their respective jurisdiction."

Section 2232 reads: "In municipalities referred to in section 2231 of this title which have not enacted a zoning ordinance under the provisions of chapter 67 of this title, the ordinance authorized in the preceding section shall be substantially as follows."

The defendants' position is that plaintiff is relegated to Chapter 67 for its power to control mobile home parks since it had enacted a zoning ordinance under that chapter. They also urge that section 2232 clearly shows plaintiff had no authority to zone trailer parks under the enabling act.

■ The legislative intent must control in determining the construction of statutes dealing with the same subject-matter. *Burke* v. *Beecher,* 101 Vt. 441, 144 Atl. 200; *Davidson* v. *Davidson,* 111 Vt. 24, 9 A.2d 114. When two statutes deal with the same subject matter and one is general and the other special, they must be read together and harmonized if possible to give effect to a consistent legislative policy. *Becker* v. *Selectmen of Bennington,* 123 Vt. 6, 178 A.2d 399.

■ Where words have been omitted from a statute by inadvertence or through clerical error, and the intent of the legislature is ascertainable from the context, the court will insert the words necessary

to carry out that intent. Annotation, 3 A.L.R. 404, and cases there cited. And where the meaning of a statute is plain, the courts must enforce it according to its terms. *Mier's Admr.* v. *Boyer,* 124 Vt. 12, 13, 196 A.2d 501. Rhyne Municipal Law, p. 243.

Construing the zoning statutes under Chapter 67 and the trailer parks ordinance authority, sections 2231-2233, as *pari materia,* it is evident that the legislature did not intend what defendants claim. To do so would place a constrained construction on section 2232. It would create a restraint and restriction upon municipalities which had not enacted an ordinance to regulate and license trailer parks in a zoning ordinance, previously adopted. This result was certainly never intended by the legislature and would do violence to the enabling act which was to effectuate the salutary purposes expressed therein.

There is no language used in section 2232 which can be interpreted either to prohibit the municipality referred to from enacting a trailer park ordinance under section 2231 or to "relegate" to Chapter 67 the municipality which has adopted a zoning ordinance thereunder.

Significant, also, is sub-paragraph 12 of section 2232 where it is said in the form of ordinance authorized: "All ordinances inconsistent with or contrary to the provisions of this ordinance are hereby repealed . . ." If, as defendants urge, sections 2231-2233 apply only to a municipality which has not enacted *a zoning ordinance,* there surely was no purpose in the legislature including this provision in the statute. Under such circumstances sub-paragraph 12 would be meaningless. It recognizes the fact that a municipality was empowered to pass an ordinance under the power granted by the above sections even though it then had a zoning ordinance in effect under Chapter 67.

We interpret the words in section 2232 "which have not enacted *a zoning ordinance* under the provisions of Chapter 67" to refer to the subject matter of the enabling act itself, that is, the regulation and licensing of trailer parks. It is apparent the legislature meant "enacted *such* a zoning ordinance."

The power to regulate and license trailer parks is specifically granted by 24 V.S.A. §§2231-2233. This cannot be said of Chapter 67 and whether such power is granted, we do not decide, nor is it required or necessary to do so here.

The defendants contend that the court's decree prohibits a continued non-conforming use of defendants' property and gives the ordinance retroactive effect.

Sub-section 3(A) of the 1959 amendment reads:

"A. No person shall maintain or operate a mobile home park without first having obtained a license from the licensing authority. And no license shall be granted until the building inspector, zoning administrator, commissioner of public works, fire chief and health officer shall have given their written approval after examination of the application and inspection of the property for which the application is made."

Sub-section 9 of the amendment provides:

"Sub-section 9—*Previously Existing Parks*. All mobile home parks in existence upon the effective date of this ordinance shall comply with the requirements of this ordinance, except that the licensing authority shall, upon application of a park operator, waive such requirements that require prohibitive reconstruction costs if such waiver does not alter the sanitation requirements herein provided."

■ Defendants' trailer or mobile home park pre-existed the 1959 enactment of the ordinance to regulate and license such parks. That ordinance does not, however, prohibit defendants the continued use of their land for a mobile home park or provide that such use is eliminated. Nor could it require the cessation of such nonconforming use as the right to such use is a property right, and generally a zoning ordinance may not operate retroactively to deprive one of such vested right. Rhyne Municipal Law, §3232. *Schneider* v. *Board of Appeals,* 402 Ill. 536, 84 N.E.2d 428; *James* v. *Greenville,* 227 S.C. 565, 88 S.E.2d 661, 667-69, 671-72; *Atlantic City* v. *LeBeck,* 124 N.J.L. 310, 11 A.2d 602, aff. 125 N.J.L. 373, 15 A.2d 653, where it was held that a zoning ordinance was ineffective to prohibit use of property for maintaining a boarding and rooming house where property was so used before passage of the ordinance. Being a vested right, it may not by statute or ordinance be destroyed. *City of Manchester* v. *Webster, supra.* It has been held that a municipality may not, by enacting a zoning ordinance, destroy or take private property without compensation, especially where, prior to the enactment of the ordinance, the owner had expended substantial sums in constructing

and operating upon lands owned or leased by him a lawful and useful business or occupation which is not a nuisance. *Stoner McClay System* v. *Des Moines,* 247 Iowa 1313, 78 N.W.2d 843, 58 A.L.R.2d 1304. This does not mean, however, that trailer or mobile home parks may not be subject to reasonable regulation and license requirements.

In *Morris* v. *Township of Elk,* 40 N.J. Super. 34, 122 A.2d 15, where the statute as here under sections 2231-2233 authorized the regulation and licensing of trailer camps, the court held that a municipality can regulate and license trailer camps only by regulating and licensing the conducting of trailer camps as a business.

Trailer parks may be regulated under the police power. *Huff* v. *Des Moines,* 244 Iowa 89, 56 N.W.2d 54, 57. It is generally recognized that trailers and trailer camps not subjected to adequate supervision and health controls can create conditions hazardous to the public well-being. Rhyne, *supra,* §26-40. An ordinance may validly require a permit for the use of property as a trailer site, even though being so used at the time the ordinance was adopted, *Perinton* v. *Muzeka,* 141 N.Y.S.2d 607; require daily inspection of trailer camps, *Stary* v. *Brooklyn,* 162 Ohio St. 120, 121 N.E.2d 11; and exact reasonable fees covering inspection and licensing, *Cloverleaf Trailer Sales Co.* v. *Pleasant Hills,* 366 Pa. 116, 76 A.2d 872, and *Edwards* v. *Borough of Moonachie,* 3 N.J. 17, 68 A.2d 744. See generally Anno. 22 A.L.R.2d 774.

It is said in 8 McQuillan Municipal Corporation, §25.150:—"Although the general aim of both zoning and licensing is the promotion of the general welfare, each, strictly speaking, is independent of the other. Accordingly, the fact that zoning permits a particular use in a certain district does not free that use from the requirement of a license or permit under a licensing ordinance. Similarly, a license or permit may be required under a zoning ordinance even though it is not required under any other police or licensing measure." See also *Morris* v. *Township of Elk, supra,* at p. 17.

As stated in section 2232, the purpose of the trailer parks ordinance is to provide certain minimum standards for the licensing and regulation of trailer and mobile home parks.

While nonconforming buildings and uses existing at the time that zoning restrictions became effective cannot be prohibited,

they are subject to reasonable regulation under the police power to protect the public health, safety, welfare or morals. 8 McQuillan, *supra*, §25.182, citing *2700 Irving Park Blvd. Bldg. Corp.* v. *Chicago*, 395 Ill. 138, 69 N.E.2d 827; *Mercer Lumber Companies* v. *Village of Glencoe*, 390 Ill. 138, 60 N.E.2d 913; *Appeals of Palumbo*, 166 Pa. Super. 557, 72 A.2d 789, 793.

Sub-section 9 of the 1959 amendment recognizes defendants existing and nonconforming lawful use of their property as a mobile home park and entitled to protection against the ordinance when it became effective. It provides that the licensing authority *shall*, upon application, waive such requirements of the ordinance that require prohibitive reconstruction costs if it does not alter the sanitation requirements of the ordinance.

Courts will not interfere with zoning unless it clearly and beyond dispute is unreasonable, irrational, arbitrary or discriminatory. This rule is applicable to administrative grant or denial of special uses, variances, exceptions or nonconforming uses. 8 McQuillan, *supra*, §25.279.

The 1959 amendment to the zoning ordinance of 1948, and the amendment to it of 1961, does require the defendants as operators of a mobile home park to apply for and obtain a license, in accordance with the views herein expressed.

*The decree below is to be modified accordingly. Remanded.*